UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

_____
                                    )
RHODE ISLAND RESOURCE RECOVERY      )
CORPORATION,                        )
                                    )
         Plaintiff,                 )
    v.                              )    CA. No. 10-294-S
                                    )
TRAVELERS CASUALTY AND SURETY       )
COMPANY OF AMERICA,                 )
                                    )
         Defendant.                 )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Defendant insurer, Travelers Casualty and Surety Company of America ("Travelers"), moves for partial summary judgment seeking to limit its crime coverage liability to Plaintiff insured, Rhode Island Resource Recovery Corporation ("RIRRC"). For the reasons set forth below, Travelers' motion is DENIED.

I.  Background

RIRRC was established by the Rhode Island General Assembly to provide waste management services to municipalities and businesses throughout the State. On November 12, 2007, Executive Director Michael O'Connell sent a memorandum to Rhode Island Governor Donald L. Carcieri raising certain ethical concerns about RIRRC's operations. The Governor, in turn, asked the Rhode Island Bureau of Audits to conduct an investigation.

On September 22, 2009, the Bureau of Audits issued a final report detailing "numerous instances in which employees, vendors, and various current and former Commissioners, appear to have acted in ways that compromised their fiduciary and ethical obligations to [RIRRC] and to the public." (Summ. of Findings 1, ECF No. 1-10.)

On March 5, 2010, following the release of the final report, RIRRC sent its insurer, Travelers, a Sworn Statement in Proof of Loss ("Proof of Loss") alleging employee and fiduciary theft within the coverage of its crime policies for the periods February 1, 2008 to February 1, 2009 and February 1, 2009 to February 1, 2010 (the "Policies"). (Def.'s Statement of Undisputed Facts ¶¶ 1, 15, 18, ECF No. 29 ("DSUF").) The Proof of Loss alleged losses in excess of sixteen million dollars resulting from over a decade of pilfering at RIRRC by various combinations of commissioners, employees and third parties. (Proof of Loss, ECF No. 1-8.) A few days later, on March 11, 2010, RIRRC brought the present suit against Travelers seeking a declaratory judgment adjudicating its rights under the Policies. On July 7, 2010, it amended its complaint adding claims for breach of contract and bad faith.

The Policies are substantively identical, and each provides separate crime coverage under several "Insuring Agreements." (The Policies, ECF No. 1-6, 1-7.) Travelers' present motion

2

seeks to limit RIRRC's claim for coverage under the Employee Theft Insuring Agreement (hereinafter, "Employee Theft")[1] and the ERISA Fidelity Insuring Agreement (hereinafter, ERISA Fidelity Theft).[2] (DSUF ¶ 4.) For thefts covered under either Insuring Agreement, the Policies provide that Travelers will:

> pay [RIRRC] for direct loss that [RIRRC] sustain[s] which is directly caused by a Single Loss taking place at any time and which is Discovered by [RIRRC] during the Policy Period . . . .

(Id. ¶ 3.) The Policies include a $1,000,000 "Single Loss" liability limit for Employee Theft and for ERISA Fidelity Theft. (Id. ¶ 5.) The Policies define Single Loss as:

> a. an individual act;
> b. the combined total of all separate acts; or
> c. a related series of acts;
> committed by an Employee or committed by more than one Employee acting alone or in collusion with other persons both during and before the Policy Period . . . .

---

[1] The Policies define "Employee Theft" as follows:
> We will pay you for your direct loss of, or your direct loss from damage to, Money, Securities and Other Property directly caused by Theft or Forgery committed by an Employee, whether identified or not, acting alone or in collusion with other persons.

(Def.'s Statement of Undisputed Facts ¶ 4, ECF No. 29 ("DSUF").) (Emphasis added.)

[2] The Policies define "ERISA Fidelity" as follows:
> We will pay you for direct loss of, or direct loss from damage to, Money Securities and Other Property that belongs to an Employee Benefit Plan, directly caused by Theft or Forgery committed by a Fiduciary, whether identified or not, acting alone or in collusion with other persons."

(Id.) (Emphasis added.)

3

(Id. ¶ 10.) The Policies also contain a provision stating: "Policy Aggregate Limit of Insurance: . . . Not Applicable." (Pl.'s Statement of Undisputed Facts ¶ 44, ECF No. 39 ("PSUF").) In other words, this provision provides for multiple Single Loss recoveries under either Insuring Agreement.

Travelers asserts that RIRRC's undisputed[3] theft allegations evince no more than one Single Loss for Employee Theft and one Single Loss for ERISA Fidelity Theft. Because the alleged thefts were perpetrated by the same group of RIRRC employees, in varying combinations, Travelers argues that these activities constituted only a Single Loss, i.e.: "the combined total of all separate acts . . . committed by an Employee or committed by more than one Employee acting alone or in collusion with other persons . . ." (DSUF ¶ 10.) RIRRC responds that the Policies are ambiguous because the definition of Single Loss conflicts 1) with case law interpreting similar language and 2) with the Policies' own non-aggregation clause, thereby requiring the Court to construe the Policies in its favor and permit multiple Single Loss recoveries under the facts presented.

II. Legal Standard

Summary judgment may be granted only where there are no genuine issues of material fact. Dávila v. Corporación de P.R.

---

[3] Travelers accepts as true RIRRC's material factual allegations for the purposes of the present motion only.

4

Para La Difusión Pública, 498 F.3d 9, 12 (1st Cir. 2007). There is a genuine issue of material fact where "a reasonable jury could resolve the point in favor of the nonmoving party" in a way that would be outcome determinative. Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 150 (1st Cir. 2006) (quoting United States v. One Parcel of Real Prop., 960 F.2d 200, 204 (1st Cir. 1992)).

III. Analysis

Under Rhode Island law, the scope of coverage under an insurance policy depends on the plain language of the policy. Wagenmaker v. Amica Mut. Ins. Co., 601 F. Supp. 2d 411, 416 (D.R.I. 2009) (citing Textron, Inc. v. Liberty Mut. Ins. Co., 639 A.2d 1358, 1362 (R.I. 1994)). "All provisions of a policy are read together and construed according to their plain meaning, while at the same time giving effect to all provisions." Id. (citing Aetna Cas. & Sur. Co. v. Sullivan, 633 A.2d 684, 686 (R.I. 1993)). However, "prior to construing the terms of a policy, the Court must first determine whether an ambiguity exists." Allstate Ins. Co. v. Bonn, 709 F. Supp. 2d 161, 165 (D.R.I. 2010) (citing Amica Mut. Ins. Co. v. Streicker, 583 A.2d 550, 551-552 (R.I. 1990)). "If a policy is ambiguous, that is susceptible to more than one reasonable interpretation, the general rule is that the policy must be strictly construed in favor of the insured and against the insurer." Wagenmaker,

601 F. Supp. 2d at 416 (citing Emp'rs Mut. Cas. Co. v. Pires, 723 A.2d 295, 298 (R.I. 1999)).

RIRRC points to two possible ambiguities in the Policies. First, it contends that the definition of Single Loss is facially ambiguous because the phrase "the combined total of all separate acts" contravenes established case law that "requires separate acts to be closely connected in time, place, opportunity, pattern and modus operandi before they can be grouped into one 'Single Loss.'" (Pl.'s Surreply Mem. in Opp. to Def.'s Mot. for Partial Summ. J. 3, ECF No. 49.) (Emphasis added.) This list of factors derives from the oft-cited case, Am. Commerce Ins. Brokers, Inc. v. Minnesota Mut. Fire & Cas. Co., in which the Minnesota Supreme Court set forth what has become an established test for determining whether a "series of related acts" constituted a single "occurrence" under an insurance policy. 551 N.W.2d 224, 226-31 (Minn. 1996) (emphasis added). But neither this case nor the bulk of authority relied on by RIRRC speaks directly to the Policies at issue, which define coverage in terms of "separate" acts. See, e.g., Eureka Fed. Savings & Loan Ass'n v. Am. Cas. Co. of Reading, 873 F.2d 229, 234 (9th Cir. 1989) (discussing a single loss defined as: "[c]laims based on or arising out of the same act, interrelated acts, or one or more series of similar acts"); Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc., 181 N.J. 245, 253

6

(N.J. 2004) (discussing a single occurrence defined as: "[a]ll loss or damage . . . [i]nvolving a single act or series of related acts . . ."). The Court is unaware of (and RIRRC does not supply) any authority suggesting that "separate" acts must be closely connected or related in order to be aggregated into one Single Loss under an insurance policy. Indeed, courts have held otherwise. See, e.g., Tactical Stop-Loss LLC v. Travelers Cas. & Sur. Co. of Am., No. 08-0962-CV-W-FJG, 2010 WL 2802203, at *12 (W.D. Mo. July 14, 2010) (finding unambiguous a Travelers insurance policy with an identical definition of Single Loss); S & K Motors, Inc. v. Harco Nat'l Ins. Co., 213 P.3d 630, 634 (Wash. Ct. App. 2009) (finding "unambiguous" an insurance policy defining "occurrence" to include "[t]he combined total of all separate acts whether or not related"). Even though defining Single Loss as "the combined total of all separate acts" may completely swallow the two alternate definitions of Single Loss--"an individual act" and "a related series of acts"--this redundancy alone does not ipso facto create ambiguity. (DSUF ¶ 10.)

As to RIRRC's second argument, it contends that the definition of Single Loss contradicts the Policies' non-aggregation provision, thereby rendering the Policies susceptible to two competing interpretations. The Court agrees to a limited extent. RIRRC argues that the definition is so

7

sweeping that it violates the Policies' non-aggregation clause by effectively lumping together all employee thefts occurring within a policy period no matter how many employees participated in any number of distinct thefts. The Court does not construe the phrase so broadly. "A straightforward reading of the Crime Policy indicates that it covers losses caused by theft committed by an employee . . . whether acting alone or in collusion with others." Tactical Stop-Loss, 2010 WL 2802203, at *12 (interpreting identical language). More specifically, a Single Loss theft is (a) acts "committed by an Employee," (b) acts "committed by more than one Employee acting alone" (i.e., by a group of employees), or (c) acts "committed by more than one Employee acting . . . in collusion with other persons." (DSUF ¶ 10.) (Emphasis added.) The Court does not read this definition as precluding multiple Single Loss recoveries, for example, 1) where two separate thefts are committed by two different employees acting independently of one another, or 2) where two separate thefts are committed by two entirely distinct groups of employees acting independently of one another, unless those groups collude with one or more "other persons" (i.e., non-employees).

However, this second scenario--where the participation of a common non-employee causes the aggregation of two unrelated thefts committed by two distinct sets of employees into a Single

8

Loss--is where the definition of Single Loss comes in conflict with the Policies' aggregation prohibition. Under a plain reading of the definition, if at least one non-employee (i.e., "other person") colludes with any number of groups of conspiring employees, all of those thefts become aggregated into a Single Loss based solely on the non-employee's participation in the conspiracies.[4] For instance, a Single Loss would result where Employees A & B colluded with Customer to embezzle funds from Company on Day 1 and Employees X & Y colluded with the <u>same</u> Customer to steal a car from Company on Day 2. Here, because both groups of employees colluded with the same "other person," their "combined total of all separate acts" would be aggregated together under the definition of Single Loss. This result contradicts the Policies non-aggregation clause, as the basis for the coverage under the Policies is "loss . . . caused by Theft . . . committed by an <u>Employee</u> . . . ." (DSUF ¶ 4) (emphasis added), and not loss driven by customer or third-party actions.[5]

As a consequence, the Policies provide for two competing interpretations: one prohibiting the aggregation of unrelated

---

[4] The Court need not address the situation where a single employee colludes with one "other person" to commit multiple thefts as the definition of Single Loss covers the "combined total of all separate acts . . . committed by an Employee." (See DSUF ¶ 10.)

[5] The same logic applies equally in the context of fiduciary theft under the ERISA Fidelity Theft Insuring Agreement. <u>See</u> <u>supra</u> note 2.

9

thefts committed by two or more distinct sets of employees, and one aggregating those thefts based solely on the common participation of "other persons" in the thefts. Of these competing interpretations, the former is more favorable to the Insured, as it provides for broader coverage. <u>Allstate</u>, 709 F. Supp. 2d at 165 (demonstrating that Rhode Island law requires insurance coverage ambiguities to be resolved in favor of the insured).

IV. Conclusion

Interpreting the ambiguity in RIRRC's favor, the Court therefore construes the Policies to preclude aggregating into one Single Loss "the combined total of all separate acts . . . committed by more than one employee acting . . . in collusion with other persons." (DSUF ¶ 10.) This construction is intended to reach only situations where thefts would not be aggregated into a Single Loss but for the participation of "other persons" (i.e., non-employees or non-fiduciaries, as the case may be) in the thefts.

To be clear, the Court does not hold that the facts presented constitute either a Single Loss or more than one Single Loss. Such a determination would be premature at this time, particularly as discovery is ongoing and both parties have moved to extend the discovery period (which the Court plans to address shortly). Potential disputed issues of material fact

10

remain as to the nature and extent of the thefts alleged by RIRRC. For these reasons, Travelers' motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  May 25, 2011